## Fetterolf v. Josephs et al.

*John Michael Doodan*, for plaintiff.
*Albert C. Gekoski*, for defendants.

BOK, P. J., November 2, 1950.—Plaintiff, an individual, asks that by mandamus we direct the employer who discharged her to reëmploy her, the Pennsylvania State Employment Service to expunge from her record the notation "unsatisfactory worker", and the Fair Employment Practice Commission to hold an open hearing relative to her discharge. Defendants filed preliminary objections.

The point of her complaint is that her discharge as an unsatisfactory worker—which she avers is not true —was an excuse for the real reason, namely, that she is of German origin and not Jewish: also, that the FEPC did not give her the hearing she demanded but advised her to drop proceedings upon accepting the $10 necessary to pay for her "de-nazification certificate" that her employer asked but did not wait for before discharging her.

Certainly the ordinance that established FEPC is a modern and novel type of law. So also is this complaint, the real gist of which is made clear by the brief of plaintiff's counsel to be that the ordinance does not have sufficient teeth with which properly to bite religious and racial intolerance.

Popular opinion is not clearly set on the question of discrimination, although the loom of consensus appears to be that it is an unlovely thing. It is therefore not surprising to find that governmental steps to com-

bat it are taken tentatively and with caution until experience can declare itself. People can be made incandescent by particular cases, but that very fact may hide the true direction of discrimination: it is not always easy to see in which way it is flowing, or who, after process, is the ultimate victim.

A wide band of discretion is necessarily inherent in a legal body set up to deal with a newly recognized social offense. The ordinance before us is obviously cast in such a way as to allow the FEPC to find its feet as a conciliation service and to apply the bite of sanction in proper cases. It is not required to hold a hearing—it "shall have power" to do so—and the only legal limitation apparent is that it could not apply the sanction without a hearing, since to do so would violate due process. As a conciliator it need not hold hearings, and in the instant case it exercised its discretion by going no further than the effort it made to reconcile plaintiff to her situation. Whether it might have done more or done differently by holding a hearing is beside the point: the cases are legion in holding that the courts shall not interfere by mandamus when the exercise of public duty complained of is discretionary and discretion has been exercised: Tanenbaum v. D'Ascenzo et al., 356 Pa. 260 (1947); Goodman et ux. v. Meade et al., 162 Pa. Superior Ct. 587 (1948).

The right is obvious in the FEPC to select its course of action and plan its future within the limits of the ordinance. Under public opinion as we can sense it, we cannot declare unreasonable the commission's decision, if it be so, to feel its way and test its footing as a conciliation service before resorting to hearings and penalties.

In any event, mandamus is not the proper remedy. It is statutory, and the Act of June 8, 1893, P. L. 345, 12 PS §1911 et seq., sets the limits. Certainly it can-

not be applied against a private person but against public officials only, and this removes individual defendant from the case at once.

As for the right of an individual to bring the action, see Butcher v. Philadelphia Civil Service Commission et al., 163 Pa. Superior Ct. 343 (1948). Section 3 of the act follows common law in providing that the writ may issue on behalf of "any person beneficially interested", while section 4 provides that when the writ is sought to procure the enforcement of a public duty, the proceeding shall be prosecuted in the name of the Commonwealth on the relation of the Attorney General or, in proper cases, of the district attorney of the proper county.

The action is well defined in Goodman et ux. v. Meade et al., supra, (162 Pa. Superior Ct. 587 (1948)):

"Mandamus may be defined as a command issuing from a court of law of competent jurisdiction, in the name of the state or sovereign, directed to some inferior court, officer, corporation, or person, requiring the performance of a particular duty therein specified, which duty results from the official station of the party to whom it is directed or from operation of law: 18 R. C. L. p. 87, sec. 1. . . .

"A writ of mandamus cannot be used as an appeal or writ of error to review the discretionary acts of subordinate tribunals. *Homan v. Mackey*, 295 Pa. 82, 144 A. 897; *Kaufman Construction Co. v. Holcomb*, supra, 357 Pa. 514, 55 A. 2d 534."

And in Tanenbaum v. D'Ascenzo, supra (356 Pa. 260 (1947)), the court said:

"Mandamus is a remedy of great antiquity. It is extraordinary in character and is a high prerogative writ used rather as a last resort than as a common mode of redress."

An individual must have a right independent of that which he has with the public in common: Davidson v. Beaver Falls Council, 348 Pa. 207 (1943), and cases cited.

It may seem that a person who has lost her employment through discrimination has been directly, uniquely, and personally injured. This is not the act or doing of any public official, however, and must not be confused with the right plaintiff now demands—the right to a hearing. The right to a hearing is the sort of right to which everyone is commonly entitled when it is given at all. The difficulty with the instant case is that the right to a hearing does not exist except as the FEPC may feel inclined to accord it, and plaintiff is in no different or more unique position than any other member of the public.

That mandamus is an extraordinary remedy aimed at enforcing the performance of ministerial public duties is not an empty medievalism. The courts would be swamped if they were open to the efforts of people to make other people do what the complaining parties conceived it to be defendant's public duty, and public officials would have difficulty in doing any work at all. Requiring the relation of the Attorney General or district attorney provides a necessary screening for this type of litigation.

We suggest the analogy of the victim of a criminal act such as robbery. The victim must proceed through the public authorities so far as criminal action is concerned and has no private rights: these may exist, in proper cases, in the form of a civil action for damages. Since protection exists, both criminally and civilly, for libel and slander, it cannot be said that society is turning a deaf ear on this plaintiff.

The same considerations apply to the Pennsylvania State Employment Service, against which the only remedy asked is that it be ordered to strike off the no-

tation "unsatisfactory worker" from plaintiff's record. This is not a ministerial act but rather one of substance and judgment.

The preliminary objections are sustained and the complaint is dismissed.